## Mark Flanigan v. Sidney S. Lampman.

*Proof of fraud in voluntary assignment.*—Where a voluntary assignment, ostensibly for the benefit of creditors, is assailed as fraudulent, the most liberal rules should prevail for the admission of any evidence which may tend to prove the fraud. The whole conduct of the assignee with reference to the property, after the assignment, should be allowed to be shown, as bearing upon the question of the intent with which the assignment was made. If that conduct has been entirely consistent with the professed objects of the assignment, it can not prejudice : but if it tend to show that the assignor still claims and seeks to derive a benefit from the property, to the prejudice of his creditors, it will generally tend, in a greater or less degree, to show that the assignment was originally made with this fraudulent purpose.

The assignee does not stand in the position of a bona fide purchaser for a valuable consideration; and the fraudulent intent of the assignor, in making the assignment, is sufficient to defeat the title of the assignee, though *he* may be innocent.

The defendant assailed an assignment as fraudulent; and having shown that one of the assignors bought of the assignee a horse and carriage, constituting a part of the assigned property, ostensibly as agent of his brother-in-law, who was a preferred creditor, and whose claim was alleged to be fictitious, he then asked the witness, " Who had and kept possession of said horse and carriage, after such sale, and up to the time of the present trial?" It was held that the question was proper, and the Court should have allowed it to be answered.

*Curing the error where evidence has been erroneously excluded.*—Where a question put by a party to his own witness is erroneously overruled, the error is not cured by his being allowed afterwards to put the same question to the witness of the other party on cross-examination.

*Heard November 3d. Decided November 10th.*

Error to Wayne Circuit, where Lampman sued Flanigan in replevin. To show title to the property replevied, the plaintiff produced in evidence a general assignment for the benefit of creditors, and gave evidence on the subject of possession of the chattels mentioned in said assignment, by virtue thereof; and rested.

The defendant justified as sheriff, under a writ of fieri facias, against the assignors in said assignment, Frost, Lane & Co., by virtue of which he had seized the property in question, after the day of the date of such assignment; and he produced and offered evidence tending to show fraud in said assignment, and in the possession of said assigned property after such assignment; and called one Whittemore as a witness; and he having testified that

Frost, one of said assignors, bought certain horses and carriages of the assigned property at private sale from the assignee, ostensibly as the agent of one Charles Ashworth, his (Frost's) brother - in - law, and one of the two preferred creditors in said assignment, and whose claim was alleged by defendant to be fraudulent and fictitious, said Whittemore was asked by defendant's counsel, "Who had, and kept possession of said horse and carriage, after such sale, and up to the time of the present trial?" To which question the plaintiff objected. The Court sustained the objection, and excluded the evidence.

The defendant, afterwards, on cross - examination of Charles Ashworth and Milton Frost, two of plaintiff's witnesses, asked them the same question put to said Whittemore, and said witnesses replied, that Frost did keep possession of said property up to the *last* trial, but as agent of said Ashworth; and another of plaintiff's witnesses, George M. Lane, on cross - examination by defendant, testified, "the said property remained in his possession at the time of the former trial."

The jury returned a verdict for the plaintiff.

*H. M. Cheever* and *W. E. Cheever*, for plaintiff in error.

*J. P. Whittemore, G. V. N. Lothrop* and *L. Bishop*, for defendant in error.

CHRISTIANCY J.:

We think the question put to the witness Whittemore, on the part of the defendant below, was erroneously overruled.

Assignments, ostensibly for the benefit of creditors, are so frequently resorted to by embarrassed debtors for their own benefit, as a convenient method of securing to themselves the property which justly belongs to their creditors, that, to avoid injustice, the most liberal rules should prevail for the admission of any evidence which may tend to prove the fraud. Possession of the assigned property

by the assignor, or his control over it, after the assignment, has always been held to have a strong bearing upon the question of intent with which the assignment was made. And this species of evidence is perhaps more generally resorted to than any other, to show a fraudulent intent in the execution of the instrument. And we think the whole conduct of the assignee with reference to the property, after the assignment, should be allowed to be shown, as bearing upon the question of intent. If that conduct has been entirely consistent with the professed objects of the assignment, it can not prejudice; but if it tend to show that the assignor still claims and seeks to derive a benefit from the property, to the prejudice of his creditors, it will generally tend, in a greater or less degree according to the circumstances of the case, to show that the assignment was originally made with this fraudulent purpose.

But it is urged that the question overruled related to possession after the sale by the assignee; and that, to affect his title, it should have been while he had control of the property, and that he must in some way have assented to it. But it had already been shown, by the same witness, that one of the assignors had bought certain horses and carriages of the assigned property, at private sale, from the assignee, ostensibly as the agent of one Ashworth, his brother-in-law, who was one of the preferred creditors mentioned in the assignment, and whose claim the defendant below insisted was fraudulent. If, therefore, it could be shown that the assignor, after this ostensible purchase, had kept possession of the property himself, down to the time of the trial, this, unexplained, would have some tendency to show, not only that the ostensible purchase in the name of his brother-in-law was but a sham, but also, in some degree, to show that the assignment had been made by him with a fraudulent intent. And though the assignee might have acted in good faith, and in ignorance of this fraudulent intent, either in the purchase or the assignment;

yet, if the assignment be found to have been made with this intent by the assignor, it would be void as to his creditors. The assignee does not stand in the position of a bona fide purchaser for a valuable consideration; and the fraudulent intent of the assignor, in making the assignment, is sufficient to defeat the title of the assignee, though *he* may be innocent.

The error in overruling the question put to Whittemore was not cured by the defendant's being allowed to ask the same question of the plaintiff's witnesses, on their cross-examination. A party can never be precluded from introducing competent evidence from his own witnesses, and compelled to trust the proof of any part of his case to the evidence he may be able to draw out on the cross-examination of those of his adversary. To hold that, by cross examining the witnesses of the adverse party upon the same matter, he had waived the error of the Court in excluding competent evidence offered in chief, would be to hold that he ought to have made the error of the Court as prejudicial to himself as possible. No amount of authorities could establish the soundness of such a proposition.

The judgment of the Circuit Court must be reversed, with costs of both courts, and a new trial granted.

The other Justices concurred.