# OCTOBER TERM, 1880.

## SALMON S. MATHEWS v. PAUL H. STEWART.

*Seizure in bankruptcy of goods under assignment.*

An assignment preferring certain creditors, if made in good faith, more than two months before a petition in bankruptcy is filed against the debtor (Rev. Stat. § 5128) precludes the seizure of the goods under the warrant in bankruptcy.

A common law assignment preferring specific creditors is like a chattel mortgage securing a prior debt, as both are for the benefit of particular creditors and are based on a consideration of past indebtedness; and both fall within § 5128 of the U. S. Revised Statutes by which transfers based on past indebtedness are protected from the operation of the Bankrupt Law, if made in good faith more than two months before bankruptcy proceedings.

Submission to the seizure of goods under bankruptcy process cannot be construed as a voluntary surrender of them, precluding an action of trover against the officer making the seizure.

An assignee for the benefit of creditors, who has been in possession for the purpose of making sales and is shown to be acquainted with the goods and with the prices they brought, can give his opinion as to the value of a portion of the stock taken from him under process in bankruptcy, and for which an action of trover has been brought against the officer taking them.

Error to Wayne. Submitted April 13. Decided October 6.

TROVER. Defendant brings error. Affirmed.

*Wisner & Speed* for plaintiff in error, as to the construction of §§ 5128–9 of the Revised Statutes of the United States, cited *Gibson v. Warden* 14 Wal. 244; common law assignments are classed among the conveyances specified in § 5129; *Barnewall v. Jones* 14 Nat. B. Reg. 278; *In re Temple* 17 id. 350; 4 Saw. 92; *Bean v. Brockmire* 4 Nat. B.

Reg. 106 : 10 Am. L. Reg. 181 ; a common law assignee cannot recover against the United States Marshal for property taken on a provisional warrant in bankruptcy against the assignors and delivered to the assignee in bankruptcy : *Stevenson v. McLaren* 23 Minn. 111 ; *Bolander v. Gentry* 36 Cal. 105.

*Don M. Dickinson* for defendant in error.   A provisional warrant in bankruptcy will not justify interference with the possession of a common law assignee : *In re* Manahan 19 Nat. B. Reg. 67 ; even though the assignment would be held invalid if properly attacked : *Platt v. Preston* id. 241 ; *Doyle v. Sharpe* 74 N. Y. 154 ; and the marshal will not be protected in seizing the property : *Smith v. Mason* 14 Wal. 419 ; *Marshall v. Knox* 16 Wal. 551.   An assignment is never held void under the Bankrupt Act : Bump. on Bankruptcy 10th ed. § 84 ; and this assignment would be valid under *Reed v. McIntyre* 98 U. S. 507 ; *Mayer v. Hellman* 91 U. S. 496 ; *Langley v. Perry* 2 Nat. B. Reg. 596 ; *Sedgwick v. Place* 1 id. 1, 673 ; *Tiffany v. Lucas* 15 Wal. 410 ; *Haas v. O'Brien* 66 N. Y. 597 ; contra : *Globe Ins. Co. v. Cleveland Ins. Co.* 14 Nat. B. Reg. 311 ; an assignment is not invalid as to creditors of a bankrupt unless made within two months before the act of bankruptcy : *Bean v. Brockmire* 4 Nat. B. Reg. 200 ; and all preferences made beyond that period are beyond the reach of the assignee in bankruptcy : *In re Butler* id. 304 ; *Maurer v. Frantz* id. 433 ; *In re Silverman* id. 523 ; *Collins v. Gray* id. 631 ; *In re Wynne* id. 23 ; *Folsom v. Clemence* 111 Mass. 273 ; *Hislop v. Hoover* 68 N. C. 141 ; *Seaver v. Spink* 65 Ill. 441. The opinion of one who has seen goods and is acquainted with the value of similar goods is competent evidence as to their value : *Clark v. Baird* 5 Seld. 183 ; *Howland v. Davis* 40 Mich. 546 ; *Sisson v. C. & T. R. R.* 14 Mich. 489 ; *Smith v. Mitchell* 12 Mich. 180.

GRAVES, J.   Stewart recovered in the circuit court in an action of trover, and Mathews urges that errors to his preju-

dice were committed on the trial. A brief reference to the material facts is requisite.

November 5, 1877, C. F. & A. Draper, being furniture dealers, made a common law assignment to Stewart for the benefit of their creditors. It provided that certain preferred creditors should be paid in full and the rest *pro rata* in case the fund should turn out insufficient for the entire payment of all. Stewart took possession and proceeded to carry out the trust by daily sales of the property.

February 2, 1878, and between two and three months after the assignment and possession under it, a petition was filed in bankruptcy against the Drapers, on which they were regularly adjudged bankrupts. Thereupon the usual warrant was issued to take possession of the estate, and Mathews in his capacity of marshal received it for execution. About July 5th, 1878, he proceeded with it to the place where Stewart was still engaged in selling under the assignment, and on explaining the purpose of his call as being to make seizure of the assigned property by virtue of his warrant, he obtained possession of the unsold portion and passed it shortly afterwards to the assignee in bankruptcy.

On the 27th of May, 1879, and about nine months later, Stewart demanded of Mathews a return of the property, which was refused, and on the next day this suit was begun.

It has not been claimed that Stewart's title has ever been passed on judicially. But the ground taken is that the assignment was void as against the warrant and that it may be so adjudged in defense of the marshal in this action. The general view indicated is that the Bankrupt Law, in being put in motion by the filing of the petition, reached back and divested the assignment of all force to shield the property from the process and consideration of the court of bankruptcy. The provision supposed to warrant this position in § 5129 of the Revised Statutes of the United States as amended by the act of June 22, 1874. No other part of the Bankrupt Law is cited in its favor. The counsel on the part of Stewart deny that this section applies, and insist that the assignment was exclusively subject to the one immediately

preceding, being § 5128 as amended by the act of June before mentioned, and to this the court below acceded.

By the amending act referred to, the retroaction of § 5129 was reduced from six to three months, and that of § 5128 from four to two months. Hence, if the assignment was subject to § 5128 instead of § 5129, it was not within reach of the retrospective operation of the Bankrupt Law ·at all, because more than two months occurred between the assignment and the filing of the petition. Judicial opinion has not been entirely harmonious in regard to the meaning and application of these provisions, some judges thinking that common law assignments for the benefit of creditors and with preferential conditions, were covered by § 5129. Still on examination it appears that the drift of authority in the State courts and in the inferior Federal courts has been distinctly in favor of regarding such dispositions as falling under § 5128.

It is not essential to comment on the disagreeing views which have appeared or to consume space in original discussion, because the question is deemed to have been, in effect, disposed of by the Supreme Court of the United States. Prior to the Congressional Revision the substance of these provisions appeared as two clauses of § 35 of the original act of 1867, and not in the shape of two separate sections, as arranged by the revisers.* The alterations made by amend-

---

* The sections of the Bankrupt Law referred to in the opinion are as follows:

SEC. 35. That if any person, being insolvent, or in contemplation of insolvency, within four [two] months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and [knowing] that such attachment, [sequestration, seizure,] payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited; and if any person being insolvent, or in contemplation of insolvency or bankruptcy, within six [three] months before the filing of the petition by or against him, make any payment, sale, assignment, transfer, conveyance,

ment and revision, however, produced no change in the sense as respects the question here. The construction which in this particular was due in 1868 was the proper one ten years later. The question as to which of the two regulations such an assignment as that to Stewart must be referred, was subject to the same answer when the law was repealed as when *Gibson v. Warden* 14 Wall. 244 and *Dutcher v. Wright* 94 U. S. 553 were decided.

Now, in the last of these cases one Peterson was adjudged bankrupt on a petition filed on the 8th of April, 1870, and Wright, the assignee in bankruptcy, claiming that the bankrupts on the 8th day of the preceding December had assigned certain of his property to his creditors Dutcher, Ball & Goodrich with a view to give them a preference over his other creditors, filed a bill to recover that property or its proceeds as assets of the bankrupt. The point chiefly contested was whether, as the assignment was made on the 8th of December and the filing of the petition was on the same day of the fourth month thereafter, the Bankrupt Law touched the transaction at all. At that time, as before stated, § 5128 reacted four months and § 5129 six months. Of course the assignment was within the time of retroaction given to § 5129. But no one regarded that section as applicable. The case was believed to turn on the point whether the transaction was or was not reached by § 5128. The court observed:

or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and [knowing] that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale, assignment, transfer or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be *prima facie* evidence of fraud. Any contract, covenant, or security made or given by a bankrupt or other person with, or in trust for, any creditor, for securing the payment of any money as a consideration for or with intent to induce the creditor to forbear opposing the application for discharge of the bankrupt, shall be void; and if any creditor shall obtain any sum of money or other goods, chattels or security from any person as an inducement for forbearing to oppose, or consenting to such application for discharge, every

"Both parties agree that the petition in bankruptcy was filed April 8, 1870; and it appears both by the bill of complaint and the plea filed by the respondents, that the notes, accounts and property were assigned by the bankrupt to the respondents the 8th of December of the preceding year. Undisputed as the facts are, the decision must turn upon the construction of the Bankrupt Act. 14 Stat. 534; Rev. St. § 5128." In entertaining and deciding the question whether the 8th of December, the date of the assignment, was within four months of April 8th, the date of filing the petition, according to the intent of the act, and in making the fate of the assignment turn on the result, the court virtually and effectively ruled that the assignment was one of the list of

creditor so offending shall forfeit all right to any share or dividend in the estate of the bankrupt, and shall also forfeit double the value or amount of such money, goods, chattels, or security so obtained to be recovered by the assignee for the benefit of the estate.

The sections on the same subject in the Revised Statutes of the United States are as follows:

Sec. 5128. If any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures or suffers any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and knowing that such attachment, sequestration, seizure, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this title, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited. And nothing in said section five thousand one hundred and twenty-eight [thirty-five] shall be construed to invalidate any loan of actual value, or the security therefor, made in good faith, upon a security taken in good faith on the occasion of the making of such loan.

Sec. 5129. If any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and knowing that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this title, or to defeat the object of, or in any way impair, hinder, impede or delay the operation and effect of, or to evade any of the provisions of this title, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt.

transactions arrived at by § 5128 and not by § 5129. The case can be explained on no other hypothesis. If the assignment was within the description of § 5129, there was no occasion at all for discussing whether the 8th of December was not within four months of the 5th of April, and the court, in holding that the decision of the case hinged on that point, committed an absurdity.

In *Gibson v. Warden* the question was distinctly presented whether a chattel mortgage to secure *prior* indebtedness was within the *first* clause of § 35 of the act, which became § 5128 of the Revised Statutes, or was within the *second* clause, which became § 5129, and the court passed on it explicitly. The decision was necessary because certain material results depended on the question of time. The court observed : " Upon comparing the two clauses carefully together we are satisfied that the *first* clause was intended to refer to the past and the *second* to the present. The language employed in the first clause imports clearly that the consideration must be one growing out of a former transaction, and that the recipient must stand in the relation thus created to the other party. It is equally clear that the second clause, enlightened by this construction of the first one, must be limited to cases where the transaction in question was original and complete in itself at the time it occurred, and had no reference for its consideration to anything between the parties which had gone before it. It is only by this construction that the two clauses can be made to harmonize and full and distinct effect be given to each. Any other construction would make them cover the same ground and obliterate everything by which one is differenced from the other, except the limitation of time which they respectively prescribe. It is not to be supposed that such was the intention of the law-making power. This view of the subject was taken by the Circuit Court for the District of Missouri, and subsequently there by one of the justices of this court. We can see no answer to the conclusion at which they arrived." And further on the court refer to the mortgage given between four and six months preceding the filing of the peti-

tion, and observe that "being founded upon a past considera-
tion, it falls within the first clause of the 35th section of the
Bankrupt Law, which limits the right of attack upon such
instruments to those executed within four months prior to
the filing of the petition in bankruptcy."

Now, so far as the matter in hand is concerned, there can
be no distinction between a chattel mortgage to secure past
indebtedness and a common-law assignment like that given to
Stewart.  In each case particular creditors are given a pref-
erence by the debtor in respect to the assets, and in each case
the real consideration is the past indebtedness.  *Halsey
v. Whitney* 4 Mason 206; *Lawrence v. Davis* 3 McLean
177; *Flanigan v. Lampman* 12 Mich. 58; 2 Kent's Com.
532; Burrill on Assignments, ch. 15.  The circuit judge
was therefore right in holding that the assignment fell under
§ 5128, and that the condemnatory provisions of the Bank-
rupt Law afforded no aid to the marshal, because the period
between the petition in bankruptcy and the assignment
exceeded two months.

It was made a question before the jury whether the marshal
got control and possession of the property by force of his
warrant or by the voluntary act and consent of Stewart, and
the point has received much attention from counsel.  The
subject was not submitted to the jury in a very clear manner,
but we cannot believe that the marshal was prejudiced.  In
going from Detroit in pursuit of the property, and in making
inquiry of Stewart for it and in taking it into possession, he
professed to act officially and under color of the warrant, and
in no other way.  He did not intend to be understood as
soliciting something he thought himself not authorized or
not able to enforce, and he was not so understood.  His
position and deportment menaced the exertion of whatever
power should be necessary.  He held himself out as pre-
pared to seize the property by virtue of process from the
Federal court and consequently by authority of the United
States, and the reasonable construction of the facts is that
Stewart, without forcibly contesting the claim and assump-
tion involved in the doings of the marshal, peaceably and ·

quietly surrendered to the force displayed. He took notice of the fact that violent opposition would be futile and that he was not required to make a show of it for the purpose of being entitled to seek redress by an action at law. His attitude and conduct in respect to the alteration of possession were not that of one entirely at liberty to hold on or give up according to his own discretion. On the contrary, his will succumbed to the manifestation of irresistible authority, and it does not lie with the party who obtained what he sought by the holding out of that authority to now construe the peaceable submission to its demand as an act of free and positive assent.

In the course of Stewart's testimony the court was requested to strike out as incompetent all he had then sworn to in regard to the value of the property. This was properly refused. A portion, at least, of the testimony he had then given relative to the value was competent beyond all question. No objection had been made, and the witness had shown his acquaintance with the goods, and the fact of having made sales from the stock during several months, and the total amount of those sales. He had also given his judgment of the comparative value of the portion taken by the marshal. His evidence had a direct tendency to show the value of what had been sold, because he stated what it had actually brought. And from his own intimate knowledge of the goods it was reasonable to suppose he was qualified to estimate correctly what those taken were worth. It was for the jury to say what the testimony proved. Further evidence in regard to value was given afterwards. The request to charge that there was no evidence of value does not call for remark.

The plaintiff in error failing to establish any ground for reversing the judgment, it must be affirmed with costs.

The other Justices concurred.