ASA HAIRGROVE, *et al.* v. DANIEL A. MILLINGTON, *et al.*

1. EVIDENCE; *Declarations of Assignor.* In an action brought by a creditor of the assignor against the assignor and assignee, to set aside an assignment for the benefit of creditors, on the ground that it was made for the purpose of defrauding the assignor's creditors, *held*, that the declarations of the assignor, made after the assignment, are competent evidence in favor of the creditor and against the assignor; and *held also*, that such declarations are not evidence against the assignee.

2. ASSIGNMENT FOR THE BENEFIT OF CREDITORS; *Consent of Creditors.* Where creditors of an insolvent debtor, after an assignment made by the debtor for the benefit of creditors, without a knowledge of all the facts assent to the assignment, they are not thereby precluded from prosecuting an action to set such assignment aside as being made to hinder, delay, or defraud them, and therefore void.

3. PRACTICE—JURY; *When Jury may take Written Evidence.* Where all the evidence in a case is in writing, the court may permit the jury to take it with them on retiring to consider of their verdict; but where the testimony is partly oral and partly in writing it rests largely in the discretion of the court whether it will permit or refuse to permit any portion of that which is in writing to be taken to the jury-room by the jury.

4. ——— *Special Findings.* After a jury has found a verdict and returned it into court, but before it is announced, it is hardly a proper time to ask the court to require the jury to make certain special findings.

5. ASSIGNEE—*Intent; Validity of Assignment.* The validity of an assignment made by a debtor for the benefit of his creditors does not depend upon the question whether the *assignee*, in accepting the assignment, did so with the *intent* on his part to hinder, delay, or defraud the creditors of his assignor. Neither the assignee, nor the creditors of the assignor, are "purchasers for a valuable consideration;" and it is not necessary that notice of the fraud on the part of the assignor, where such fraud exists, should be brought home to them to render the conveyance void.

*Error from Shawnee District Court.*

MILLINGTON & ORRISON, partners as *Millington & Co.*, filed their petition against *Hairgrove* and *Murphy*, alleging that they were judgment creditors of *Hairgrove;* that they had caused an execution to issue against said H., and placed the same in the hands of the sheriff of Shawnee county, who had returned said execution endorsed " No property found whereon to levy;" that on the 1st day of January, 1866, the said *Hairgrove*, being insolvent, executed and delivered to his co-defendant *John H. Murphy* an instrument purporting to be an assignment of all his property for the benefit of his creditors; that said M., by virtue of said assignment took possession of property amounting in value to more than $5,000, and still had the same in his possession. They further alleged that said assignment was fraudulent and void as to them for the reasons that Murphy did·not give bond, as required by law; that said pretended assignment authorized the assignee to sell the assigned property on credit; and that said assignment was made with the intent to cheat and defraud the creditors of Hairgrove; and plaintiffs demanded judgment that the assignment be set aside as against the plaintiffs, that a receiver be appointed, and that Murphy be enjoined from disposing of the property or any part thereof. Defendants answered separately, but the answer of each admitted the assignment, and then contained, first, a general denial; second, an averment that the assignment was made in good faith; and third, that plaintiffs had knowledge thereof, and had agreed to abide by and sustain and take under said assignment. Other facts are stated in the opinion. The case was tried at the December Term, 1869. The plaintiffs had judgment. New trial refused, and the defendants bring the case here on error for review.

*Martin & Burns*, for plaintiffs in error.

*A. H. & M. H. Case*, and *A. L. Williams*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by D. A. Millington & Co., to set aside an assignment of property made by Asa Hairgrove to John H. Murphy for the benefit of Hairgrove's creditors, on the grounds that the assignment was irregular, illegal, and made for the purpose of defrauding Hairgrove's creditors, among which were said Millington & Co. The judgment was for the plaintiffs below; and the defendants below, Hairgrove and Murphy, bring the case to this court. They assign in their petition in error fourteen errors, but in their brief they reduce the number to six, as follows: "1st.–The court below erred in permitting the plaintiffs to give in evidence on the trial the declarations and statements of Asa Hairgrove, the assignor, made after the execution and delivery of the assignment to the assignee, as proof of the fraudulent intent with which the deed of assignment was made, and evidence tending to invalidate the assignment. 2d.–The court below erred in charging the jury, 'That an assent to the assignment means an agreement by the plaintiffs to abide by the assignment with a full knowledge of all the facts.' 3d.–The court below erred in not allowing Rhinehart's deposition read in evidence to be taken by the jury on their retiring to consider of their verdict. 4th.–The court below erred in refusing to submit and in not submitting to the jury the question as asked by the defendants below, to-wit: Did Murphy accept said assignment with the intent to hinder, delay, or defraud the creditors of Hairgrove, or either of them? 5th.–The court below erred in not granting a new trial on the grounds stated in the defendants' motion therefor. 6th.–The court below erred in not rendering a judgment in favor of the defendants below on the findings of the jury as asked by the defendants."

I. We are referred to certain pages of the record as showing the first error complained of; but not one word of what Hairgrove said or declared is there proved. It is there shown that Hairgrove had money after the assignment was made, but it is shown as a fact by those who saw the money, and not by any

admission or declaration of Hairgrove. This of course was competent though weak evidence. The evidence of William Young, a witness for the plaintiffs, was objected to. It reads as follows: "Hairgrove said, these men shutting him up," (*his store*, we suppose,) "thought they had played it sharp, but he had money enough to buy them all. This was after the assignment." This as evidence to prove the original case was probably not competent as against Murphy, the assignee: *Bent v. McKinstry*, 4 Minn., 204 to 217; *Bates v. Ableman*, 13 Wis., 644; *Ogden v. Peters*, 15 Barb., 560; *Myers v. Kenzie*, 26 Ill., 36. But as against Hairgrove, who was the assignor, and a party to the record, it was unquestionably competent. The theory of the plaintiffs was, that the assigment was simply a sham; that the property assigned was still in fact Hairgrove's; that it was simply put into the hands of Murphy for the purpose of keeping it for the time-being out of the reach of Hairgrove's creditors, but that its ultimate use and benefit was designed for Hairgrove himself. This the plaintiffs certainly had the right to prove, and as against Hairgrove to prove it by Hairgrove's own statements and declarations. If Murphy had not been a party there could then be no question but that the evidence objected to would have been competent as against Hairgrove. While on the other hand, if Murphy alone had been the defendant the evidence would not have been competent. It follows then that the evidence should have been admitted as against Hairgrove, but excluded as against Murphy. Or rather, it should have been allowed to go to the jury, but the court should have instructed the jury to consider it only as against Hairgrove. It would also have been competent to prove Murphy's statements and declarations as against Murphy. But Murphy's statements and declarations would not have been competent evidence as against Hairgrove. In many cases at common law the evidence to be admissible should have affected all the plaintiffs alike, and all the defendants alike; but this was not so as a rule even in actions at common law, particularly actions of tort; and in suits in equity and in criminal actions the rule is in almost all cases directly the

reverse. At common law it seems the admissions of a party to the record were in all cases received in evidence against him; (1 Greenl. Ev., §§ 171, 172, et seq.;) and such is probably the rule in equity. At least we have no hesitancy in deciding that in equity whenever the evidence offered is competent in favor of the plaintiffs and against one of two defendants, but not competent as against the other defendant, it should be received as against the defendant against whom it is competent. It will be admitted that the said evidence of William Young was very weak even as against Hairgrove; but it was not so wholly irrelevant that the court was bound to exclude it. The court was never asked to instruct the jury that it should be received as evidence against Hairgrove only; and hence we think the court committed no error in permitting it to go to the jury in the manner it did. But the said evidence of William Young may have been competent in another aspect. Hairgrove himself was a witness on the part of the defendants. He testified in detail as to the amount of money he had at the time of the assignment, and also concerning various other sums of money that he was seen to have subsequent to the assignment. His whole testimony tended to show, and was evidently designed by the defendants to show, that Hairgrove did not retain any money directly or indirectly when he made the assignment. During his examination he said among other things, " I don't think I had five dollars in money at the time of the assignment." On his cross-examination the plaintiffs' counsel asked him the following question: " In February, 1866, did you not state to William Young (at the same time pulling out your money,) and say, they thought they were pretty sharp, but you had lots of money, and that was not all, that you had more than all of them?" Hairgrove answered, "I don't think I made such a statement to William Young." Here was an attempt to lay the foundation for an impeachment. Of course, the foundation was not broad enough; but defendants do not seem to have objected to the question asked Hairgrove, or to the testimony of Young, for that reason. Young's testimony was given after that of Hairgrove, and seemingly as

impeaching testimony. The trial proceeded thus: The plaintiffs introduced their evidence and then rested; the defendants then introduced their evidence, among which was Hairgrove's testimony, and then rested; and then the plaintiffs in rebuttal introduced among other evidence the said testimony of Young. At this stage of the trial the testimony of Young could not have been received in proof of the plaintiffs' original case, except by special permission of the court. (Comp. Laws, 169, § 277, subdiv. 3 and 4; Gen. Stat., 681, § 275, subdiv. 3 and 4.) It should have been received only as rebutting testimony, or rather as impeaching testimony; and this is probably the object for which it was offered. The defendants however instead of objecting to the evidence because it was incompetent as rebutting testimony, or incompetent as impeaching testimony, or incompetent because the proper foundation for the impeachment had not been properly laid, objected to it because " It was incompetent, irrelevant, and immaterial; that anything said or done by Hairgrove after the assignment could not affect the validity of the assignment." That is, they seem to have objected because the evidence was incompetent to prove the original case, and such is the objection they now make to it.

II. The counsel for plaintiffs in error have not referred us to the pages of the record where the other supposed errors occur, and hence we feel under no obligation to consider them. (Supreme Court Rules, No. 2.) We have however carefully examined the record, although it is a very lengthy one, containing over one hundred and eighteen pages of legal cap, and think that the rulings of the court below complained of were not erroneous. The instruction complained of was as favorable to the defendants below under the circumstances of this case as they had any right to ask. The assignment was made without consulting the plaintiffs, and before they knew anything about it. If the plaintiffs ever assented to the assignment it was after it was made, without any consideration therefor, and without a full knowledge of all the facts.

III. Where all the evidence is in writing it is generally

(though probably not always) the duty of the court to permit the jury to take it with them on retiring to consider of their verdict. But when it is not all in writing it rests largely in the discretion of the court whether it will permit or refuse to permit any portion of that which is in writing to be taken to the jury-room by the jury; and the supreme court will reverse the action of the district court in such cases only when it has abused its discretion. In this case the court below did not abuse its discretion.

IV. After a jury has found a verdict, returned it into court, but before it is announced, as in this case, it is hardly a proper time to ask the court to require the jury to make certain special findings. And in any case (as the law was when this case was tried) whether the court would require such special findings was purely discretionary; (*Topeka v. Tuttle*, 5 Kas., 312, 323; Gen. Stat., 684, § 286; Comp. Laws, 171, § 287;) and particularly so as this was an equity proceeding in which the parties were not entitled to a jury as a matter of right, and in which the court could send such issues as it chose to the jury. (Gen. Stat., 680, § 267; Comp. Laws, 168, § 275.) But it was not necessary that Murphy should have accepted the assignment with the intent to hinder, delay or defraud the creditors of Hairgrove, or of any of them, in order to render the assignment void. This question has already been decided in this court. It was decided in the case of *Kayser v. Heavenrich*, 5 Kas., 324, 340, that "Neither the assignee nor the creditors are purchasers for a valuable consideration, and it is not necessary that notice of the fraud should be brought home to them to render the conveyance void." This was decided upon the authority of the case of *Flanigan v. Lampman*, 12 Mich., 58, 61, and Burrill on Assignments, 438, 439, and cases there cited. See also *Rathbun v. Platner*, 18 Barb., 272; *Wilson v. Forsyth*, 24 Barb., 105, 120. This rule probably applies (but we do not now so decide) only where the fraud of the assignor is proved by facts, or by the declarations of the assignor made prior to or at the time of the assignment. We see no sufficient reason for overruling our former decision upon this question.

No sufficient reason has been pointed out to us why a new trial should have been granted, or why the judgment on the verdict of the jury was not correct. The judgment is affirmed.

All the Justices concurring.