## JOSEPH CANNON v. GRIFFITH & EWING.
### No. 77.

1. CONTINUANCE—*Review.* The ruling upon a motion for a continuance is largely in the discretion of the trial court, and where the continuance is granted there is less cause for a reviewing court to interfere than where it is refused.

2. CONTRACT—*When a Conditional Sale Becomes Complete.* Where two parties agree upon all the terms and conditions which shall govern the sale of a machine provided a sale is made, and the purchaser is to take the machine and test it, and if he is satisfied with it to keep it and pay for it, *held,* that the sale is complete and the purchaser is liable for the purchase price agreed upon when the condition is fulfilled; and whether or not the condition is fulfilled is a question of fact to be determined by the jury.

3. TRIAL—*Evidence May be Read by Stenographer.* When the jury request the court to have the evidence of any witness read to them, it is proper for the court, in the presence of the parties to the action, to direct the stenographer to read the evidence of the witness asked for.

MEMORANDUM.—Error from Lyon district court; CHARLES B. GRAVES, judge. Action on contract of sale of personal property by Griffith & Ewing against Joseph Cannon. Judgment for plaintiffs. Defendant brings the case to this court. Affirmed. The opinion herein, filed February 6, 1896, states the material facts.

*E. W. Cunningham*, for plaintiff in error.

*Graves & Dickson*, and *I. E. Lambert*, for defendants in error.

The opinion of the court was delivered by

DENNISON, J.: This action was brought in a justice's court in the city of Emporia, Lyon county, Kansas, by Griffith & Ewing against Joseph Cannon to recover the purchase price of a "Buckeye frameless binder, complete with bundle carrier and trucks." Judgment was had against Cannon, and he appealed to the district court. The case was there tried with a jury and judgment rendered against Cannon for $130. He brings the case here for review.

The plaintiff in error contends that the court erred in sustaining a motion for a continuance of this case to the next term of the court. The question of continuing a case is very largely in the discretion of the court, and where the continuance is granted there is less cause for a reviewing court to interfere than where the continuance is refused. Was the plaintiff in error prevented from having a fair trial by reason thereof? We think not.

The evidence in this case is in some things very conflicting, but the following facts may be considered as established by the evidence : Griffith & Ewing were

selling binders; Cannon wanted to buy one; he would not give an order, but he offered to take one home and test it, and, if he was satisfied with it, to keep it and pay $130 cash for it; Griffith & Ewing acceded to his proposition and he took the machine home; on Thursday of that week, Eastman, an agent of the manufacturers of the machine, and Smith and Wells, who were in the employ of Griffith & Ewing, went out to Cannon's place and set up the machine, and Smith and Cannon both run it in Cannon's wheat; the machine, with the exception of the bundle carrier, performed well, and Cannon testified that he told Eastman and Smith that he was satisfied with it as far as it had gone, and that, if upon further trial he was still satisfied with it, he would come in and pay for it. Eastman testified that Cannon said he was satisfied with the machine and that he would pay for it the first time he was in. Smith testified:

"We set up the machine and run it an hour or two, until we seen it had given satisfaction, or at least he said it had; and it was getting along 6 o'clock, I suppose, in the evening then, and Mr. Cannon said to me, 'Tell the boys I'll be in Saturday and settle for the machine.'"

Wells, who is a son-in-law of Cannon, did not seem to remember much about it. Cannon testified that he continued to run the machine until Saturday noon, and then came to the store of Griffith & Ewing, and said to Mr. Griffith, "I guess I'll take the machine." He also testified that he was thoroughly convinced Saturday noon that he was not satisfied with the machine. He also testified that he said to Griffith on Saturday evening, "I could have paid you for that machine to-day, if the bank had not been closed." Griffith and Ewing both testified that he said he had hurried to

get in before the bank closed and pay them for the machine, but that it did not matter as he would be in the first of the week and pay them for it. The testimony of all the parties was, that the bundle carrier did not do good work, but there was some evidence tending to show that Griffith & Ewing had agreed that they would furnish a new one or deduct the price if it did not finally work all right, and that Cannon seemed to be satisfied with this arrangement. Cannon continued to use the machine until he had cut his wheat and that of one of his neighbors, and had commenced upon the field of another neighbor. The axle and one of the drive-wheels had begun to wear and cut each other until the wheel leaned over and would catch into some of the other parts of the machinery, and, when it would run no more, Cannon took it back to Griffith & Ewing. It is not our province to weigh this conflicting testimony. We are willing to concede this pleasure to the jury. We can only determine whether any error was committed in the introduction of evidence and in the instructions given to the jury. The instructions complained of are contained in the following:

"5. It appears from the evidence that the only condition upon which the defendant would buy the machine was, that he would try it, and if upon trial it should work satisfactorily, then he would keep it and pay cash therefor. It further appears that defendant was permitted to take the machine upon these conditions, with no definite time fixed in which the trial should be made nor as to the manner and extent of the trial.

"6. Under such an agreement, the defendant would have the right to make such reasonable tests as he might desire, and for that purpose he might keep the machine a reasonable time.

"7. If after a trial, great or small, long or short,

the defendant became satisfied with the machine, and fully concluded in his own mind to buy the same, this would complete the sale, and the title to the machine would immediately pass to the defendant.

"8. The delivery of the machine to the defendant, under the conditions agreed upon, was a compliance with the conditions of the sale on the part of the plaintiffs ; and when, if at all, the defendant determined to accept the machine as satisfactory, then at that moment there was such a meeting of the minds as would complete the sale.

"9. Of necessity there is always some point of time when a transaction between the parties thereto becomes final and fixed. In this transaction, this point of time is, if at all, when the defendant becomes satisfied, and determined in his own mind to buy the machine and pay for it.

"10. If you find that the sale at any time became completed, then the machine became the property of the defendant, and no defects subsequently discovered could change the relation of the parties and nullify such sale.

"11. If the defendant did not fully conclude at any time to accept the machine, and pay for it, then no sale was made, and the plaintiffs have been the continuous owners of the machine, and in that event you will find for the defendant.

"12. In determining whether the defendant fully accepted said machine as satisfactory, and as a completed sale or not, you will consider what he said and what he did in relation thereto, and all the circumstances shown."

There is no prejudicial error in these instructions. The attorney for the plaintiff in error argues the question of the acceptance of the machine entirely upon the theory that there must be a contract of acceptance. In this case the contract of sale was made ; its terms and conditions had all been agreed to. If the sale should be made at all, contract of sale was entered into before Cannon took the machine. The only ques-

tion left open was, Shall there be a sale? This was to be decided, not by anything Griffith & Ewing might do or say, but by the satisfaction of Cannon. When Cannon was satisfied the sale was completed, and he was liable for the purchase price agreed upon. Suppose Cannon had proposed to take the machine home upon the condition that, if he could on the next day collect the money due upon a note he then held against one of his neighbors, he would keep the machine and pay the cash for it, but if he failed to collect said money, he would on the second day return the machine, and Griffith & Ewing had assented to the offer: what would have completed the sale so far as the liability of Cannon for the purchase price was concerned? The collection of the note. If he obtained the money on the note the next day, the moment he obtained it he was liable for the price of the machine. The question of whether the condition had been fulfilled was a fact to be determined by the jury. Mr. Smith was examined about the testimony of Mr. Cannon before the justice of the peace relative to the bundle carrier, and was asked the following question:

" Do you remember I asked him if there had been nothing wrong but the bundle carrier would he have raised any objections to the machine? Do you remember what he said to that?

[Defendant objected to the question as incompetent, irrelevant and immaterial and not cross-examination. The objection was overruled, to which defendant excepted.]

" Q. Go ahead, Mr. Smith. A. Well, the best of my memory now is that he said he would not have raised any objections if the bundle carrier had been the only thing."

He was also asked if he knew what the bundle carrier was put in at, and he answered that he guessed

it was worth about $5 or $6. The plaintiff in error contends that proof of this character was wholly immaterial. There was considerable evidence introduced tending to show that Cannon was satisfied to rely upon the promise of Griffith & Ewing to replace the bundle carrier or deduct the value of it if it failed to work. Upon this theory the value of the bundle carrier was proper, and it was also material evidence to establish the fact that Cannon was relying upon the promise of Griffith & Ewing to remedy that defect.

The plaintiff in error also claims that the machine was sold with a warranty, and that therefore the court erred in giving instruction No. 10, *supra*. The evidence in this case would not sustain a contract of warranty. On the contrary, Cannon refused to buy on any terms but those he dictated. However, the language of instruction No. 10 was amply explained by the following language contained in instruction No. 13 :

"If you should find that there was a completed sale, and that the machine became the property of the defendant, still the defendant claims that the machine was warranted to be a first-class machine, and to do good work, and on a fair trial it showed it was unable to do so. If this claim on the part of the defendant is established by preponderance of the evidence in the case, then you will find for the defendant. A person who buys a machine which is warranted to be first class and capable of doing good work may, if after a fair and reasonable test it proves to be deficient, return it, if done within a reasonable time, and if he does so he cannot be required to pay for it. The burden of proof is upon the defendant to establish the alleged warranty, and the breach of it, by preponderance of the evidence in the case. Upon the question of warranty, as soon as the defendant ascertained to his satisfaction that the machine was not as war-

ranted, it was his duty to return the machine at once, or notify the plaintiff of its deficiency, and any unnecessary delay in this matter would be held to be a waiver of his right to return the machine. Whether the defendant acted with reasonable prudence in this respect or not is for you to determine from the evidence.''

The plaintiff in error contends that the court erred in permitting the evidence of Smith and Eastman to be read to the jury. It appears that about 6 o'clock P. M. the judge called the jury from their room and asked them how they were getting along, and one of the jurors replied : '' If we could hear the evidence of Smith and Eastman read we could decide it in 10 minutes.'' The judge replied : '' I will try and have the stenographer come down after supper and read it to you.'' After supper the judge directed the stenographer to read the evidence as requested by the jury. Cannon was present each time. This is a matter largely in the discretion of the trial court. In this case he certainly did not abuse his discretion. The jury are sworn to try the case according to the law and the evidence. If they are in doubt as to what the law is, or some of them have misunderstood the court's instructions, it is highly necessary that they should be informed as to what the law actually is, so that they can comply with the terms of their oath. If they are in doubt as to what the evidence is, or some of them have an impression that it is different from what others of them believe it to be, they certainly should be informed as to what the evidence really is, so that they can decide the case according to the evidence. This right is given them by paragraph 4375 of the General Statutes of 1889. It is there provided that the court may give its recollec-

tions as to the testimony on the point in dispute. This law was passed before the stenographer had come into general use in our courts. If the court may give its recollection of the testimony, how much better it is that he may require it read from the short-hand notes of the stenographer. If the stenographer has not taken the testimony correctly the judge can then correct it, and the chances of getting the testimony exactly correct are tenfold greater than when one must rely upon the recollection of any person. In *Thompson v. McEwen*, 24 Kan. 757, the evidence of the plaintiff in error was wholly oral, and that for the defendant in error was wholly written, and the court permitted the depositions of the latter to be taken by the jury into their room for deliberation, and it was held not error. See, also, *Hairgrove v. Millington*, 8 Kan. 480, and *Wood v. Wood*, 47 id. 617. Counsel for plaintiff in error contends that it does not appear that there was any disagreement among the jury as to the evidence of these two witnesses. When one member of the jury said to the judge, "If we could hear the evidence of Smith and Eastman we could decide it in 10 minutes," and the others by their silence acquiesced therein, we think it appeared to the judge that there was some disagreement as to what these witnesses had testified to, and he did just what he ought to have done in requiring it to be read to them.

The judgment of the district court is affirmed.

All the Judges concurring.