No. 39,695

SAMUEL N. PHILLIPS and PEGGY PHILLIPS, as Next of Kin and Parents of John Nathan Phillips, Deceased, *Appellees,* v. FRANK CARLSON, ELMO W. CARLSON and CALVIN A. CARLSON, Doing Business As CARLSON & SONS TRUCKING LINE, and HAWKEYE CASUALTY COMPANY, *Appellants.*

(284 P. 2d 604)

Opinion filed June 11, 1955.

*T. F. Railsback,* of Kansas City, was on the briefs for the appellants.

*A. J. Herrod,* of Kansas City, was on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by Samuel N. and Peggy Phillips to recover damages for the wrongful death of their two-year-old son, resulting from an intersection collision between a panel truck, in which the deceased child was riding, and a tractor-trailer combination transport truck used by defendants Carlson in the operation of their trucking line, which was insured as to liability by the defendant Hawkeye Casualty Company.

As the facts will be more fully stated, we will briefly note the pleadings, as they require little attention. Plaintiffs' petition alleged defendants' truck driver was negligent and responsible for the collision and resulting death of their son, while defendants charged the negligence of the operator of the panel truck in which the deceased child was riding was the cause of the accident. From the issues thus joined and the evidence presented, along with certain special questions and instructions given by the trial court, which were agreed upon by the parties, the case was submitted to the jury. The jury returned its answers to the special questions submitted by the court and its general verdict in favor of the plaintiffs. The trial court approved the verdict and entered judgment for plaintiffs. From the order of the court overruling defendants' motion for a new trial, they appeal and assert (1) that the verdict is contrary to the evidence, and (2) certain rulings of the court are erroneous.

The evidence, pertinent to the questions in this appeal, may be briefly stated: Plaintiffs were both employed at night and, on the date of the accident, left their two-year-old son in the care of the Shivers family, in whose home plaintiffs and their child lived in an apartment. On the evening of June 1, 1951, Mr. Shivers started out for a pleasure ride in his one-half ton panel truck, taking his wife, son, daughter and the little Phillips boy. Mr. Shivers drove the truck, his wife sat on his right, and his son, daughter and the plaintiffs' son sat on a tool chest immediately back of them in the panel

truck. About nine o'clock the same evening, Mr. Shivers drove his panel truck north on Kansas State Highway 7. This highway intersects U. S. Highway 24-40, which is a four-lane super highway running in an easterly-westerly direction. Each of the four lanes is fifteen feet wide, and the two eastbound are divided from the two westbound by a medial strip four feet wide. There is a stop sign at the intersection on Highway 7. Mr. Shivers stopped his panel truck at the sign and looked to his left and observed a car coming from the west on Highway 24-40 about a half mile away, then looked to the right and saw nothing. The car approaching from the west seemed to Mr. Shivers to be a safe distance away and he proceeded to cross the highway. As he arrived in the inside eastbound lane of Highway 24-40, he again looked to the west and to the east. At this time the front end of his panel truck was about even with the medial strip of the highway. When he looked to the west he saw the headlights of the eastbound car approaching in the inside lane at a speed which he estimated at 70 to 75 miles per hour. He then looked east and saw the large transport truck of defendants Carlson about 600 feet away, traveling west at a speed of 30 to 35 miles per hour. During this time, Mr. Shivers estimated the speed of his panel truck to be 10 to 15 miles per hour. He testified he again looked west and, believing the car to be approaching at a high speed, mashed down on the accelerator of his panel truck in an attempt to get across the highway. His truck had arrived in the north lane of the two westbound lanes of Highway 24-40 when it was struck by the defendants Carlson's transport truck, resulting in the death of the plaintiffs' child. There was evidence that defendants' truck driver increased the speed of the truck while traveling the 600 feet from 30-35 to 50-60 miles per hour as he approached the intersection. The jury in answer to the special questions submitted by the court found that the driver of the panel truck, Mr. Shivers, stopped at the stop sign before entering the four-lane highway, and at that point defendants' truck was visible for 600 feet, and it was then traveling 35 miles per hour; that when Mr. Shivers entered the intersection, defendants' truck was not approaching so closely on the highway as to constitute an immediate hazard; that after Mr. Shivers first saw defendants' truck, the truck driver increased its speed to over 35 miles per hour, and that the collision would not have occurred had not defendants' truck driver increased the speed of the truck. The jury further found that plaintiffs did not place

their minor child in the custody of the Shivers for a consideration, nor did they give the Shivers any instructions as to what they were to do with their child while it was in their custody.

The answers to the special questions submitted disclosed that the jury found the negligence of the defendants' truck driver, in increasing the speed of his truck after Shivers' truck was in the intersection, was the proximate cause of the collision and death of plaintiffs' son.

Defendants contend plaintiffs cannot recover for the reason that at the time of the collision, Shivers was acting as the agent of the plaintiffs in transporting their son. This objection needs little attention. The question of agency was joined by the pleadings; defendants admit the court rightfully instructed on the issue of agency; the jury by its answers to the special questions found that such agency did not exist, and there was sufficient evidence to support such findings. Moreover, from the answers to the special questions and the general verdict, Shivers was exonerated of any negligence. The jury by its general verdict found all issues in favor of the plaintiffs and against the defendants. The answers to the special questions were sustained by sufficient competent evidence, were not inconsistent with each other, and were in harmony with the general verdict.

Some time after the jury had retired for deliberation, it sent the following note to the trial court:

"May we please see the first testimony that Roscoe Shivers made in regard to his stopping or not stopping at Highway 40 on Highway 7?"

In response thereto, the jury was returned to the courtroom where the court had the reporter re-read the testimony of Mr. Shivers. Defendants contend all testimony other than that of Mr. Shivers should have been read to the jury, and that the reading of only part of the testimony relating to this question gave undue emphasis to Mr. Shivers' testimony to the prejudice of defendants. It is to be noted that the jury requested only the testimony of Mr. Shivers. The jury's failure to request testimony of any other witness indicated it had clearly in mind the testimony of other witnesses relating to that question. G. S. 1949, 60-2913, provides after the jury has retired for deliberation, if it desires to be informed as to any part of the evidence arising in the case, it may request the officer to conduct it to the court, where the evidence on the point shall be read or exhibited to it in the presence of, or after notice to, the parties or their counsel.

Long ago in *Cannon v. Griffith,* 3 Kan. App. 506, 43 Pac. 829, it was stated when the jury requests the court to have the evidence of any witness read to them, it is proper for the court, in the presence of the parties to the action, to direct the stenographer to read the evidence of the witness asked for. (See, also, *State v. Logue,* 115 Kan. 391, 223 Pac. 482.)

In the trial of an action, if the jury, after hearing the evidence and after having been instructed by the court and retired to its room, disagrees as to the testimony of a certain witness, it is not error for the court at the request of the jury, in the presence of or after notice to the parties or their counsel, to require the official court reporter to read the testimony of the witness which is in dispute, and which was taken down by him when the witness was on the stand. When this is done, the objection that undue emphasis is given the evidence thus read cannot be sustained. (*State v. Logue,* supra; 53 Am. Jur. 666; 64 C. J. 1044; 89 C. J. S. 126.) The court did not err, in the absence of the jury's request to have the testimony re-read of other witnesses bearing on the same subject.

In view of what has been said, the judgment of the trial court is affirmed.

It is so ordered.