**UNITED STATES of America,**
**Plaintiff,**

v.

**John Raymond CAMPBELL,**
**Defendant.**

**Crim. No. 4332.**

United States District Court
N. D. Iowa, W. D.

Feb. 13, 1956.

F. E. Van Alstine, U. S. Dist. Atty., Philip C. Lovrien, Asst. U. S. Dist. Atty., Sioux City, Iowa, for plaintiff.

Zigmund Chwirka, Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

The defendant was indicted in six counts for falsely assuming and pretending to be an employee of the Veterans Administration in violation of 62 Stat. 742 (1948), 18 U.S.C.A. § 912. Each count related to a separate transaction. There were six complaining witnesses. Shortly after the jury retired the jury, by the foreman, transmitted a written communication to the Court. The jury were returned to the court room, and in the presence of counsel and the defendant the written communication was then read. In the communication it was stated that the jury were uncertain as to which evidence related to each count and requested that the testimony of the six complaining witnesses be read to them and that they be allowed to take notes as the testimony was read. Out of hearing of the jury counsel for the defendant made objection to the reading of the testimony of the complaining witnesses unless the testimony of the defendant relating to the transaction testified to by such witnesses was also read. He also made objection to the taking of notes by the jurors as the testimony was read. The Court made inquiry of the jury as to whether they desired any other testimony to be read other than the testimony of the complaining witnesses. The jury replied that they did not desire any other testimony to be read. The Court then ruled that the testimony of the six complaining witnesses be read to the jury and that the testimony of the defendant relating to the transactions testified to by such witnesses need not be read. The Court further ruled that the request of the jurors for leave to take notes as the testimony was read be granted. This opinion relates to those rulings.

Since the advent of the reporting of trials by court reporters,[1] it has not been uncommon for a jury deliberating upon a case to request the Court to have the reporter read to them the testimony of a certain witness or witnesses. When such a request is made, it is not uncommon for the party as to whom the testimony is unfavorable to object to the reading of it at all or to object to the reading of it unless other testimony contradicting it is also read. It is well established that it is proper for the trial judge to grant the request of a jury for the reading of certain testimony by the court reporter and to deny the request of a party to also have read other testimony relating to the same subject matter. United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 598–599, certiorari denied 1952, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652, rehearing denied 1952, 344 U.S. 889, 73 S.Ct. 134, 97 L.Ed. 687; State v. Perkins, 1909, 143 Iowa 55, 120 N.W. 62, 21 L.R.A.,N.S., 931, 20 Ann. Cas. 1217; Phillips v. Carlson, 1955, 178 Kan. 206, 284 P.2d 604; Autry v. State, 1949, 34 Ala.App. 225, 38 So.2d 348.

---

1. Provision was first made for official court reporters in Iowa in 1872 by Chapter 99, Acts of the 14th General Assembly. I. C.A. §§ 605.6 to 605.12. In 6 Annals of Iowa there is an account of the case of Daggs v. Frazier tried in 1850 in the United States District Court of Iowa before Iowa's first federal district judge, John J. Dyer. In the account of the case it is stated that the entire evidence, the arguments of counsel, and the instructions of the Court were taken in shorthand and later transcribed. So far as the available records show, it was the first case in Iowa to be reported by shorthand. The reporting was done by George Frazee, a member of the bar who in another historical account is referred to as "one of the few shorthand reporters in the world."

The question arose during the trial in United States v. Rosenberg, supra. In the opinion in that case, 195 F.2d 598–599, the following appears:

"The jury, during its deliberations, asked for a reading of that part of Ruth Greenglass' testimony covering the period from the time Rosenberg first approached her for espionage to the return of her husband to New York in 1945. Out of the jury's presence, defense counsel then asked the judge to have read to the jury the cross-examination covering the same period. The judge said he would not, without an express request from the jury. After the direct had been read to the jury, the judge asked them if they had what they wanted, and they said yes. Defense counsel, then, in the jurors' presence, again requested that the cross-examination be read. The judge at once replied that he would read only what the jury asked for. The jurors remained silent. Defense counsel objected. They now argue that the failure to comply with their request was prejudicial error. We think not. We think that the jury understood from the colloquy that the cross would be read if the jurors so desired, and that their silence meant they had no such desire. * * * Accordingly, we hold that the refusal to have the cross read was within the trial judge's discretion."

The Iowa case of State v. Perkins, supra, is one of the leading cases on this subject. In the opinion in that case, 120 N.W. at page 63, the following statement appears:

"After the jury had deliberated on the case several hours, it returned to the courtroom, and asked that the entire testimony of one witness and certain parts of the testimony of other witnesses be read from the shorthand notes of the trial. Whereupon the court, with counsel all present, directed the reporter to read the desired testimony, and it was read, and thereafter the defendant objected thereto. There was no error in the proceeding."

The Court goes on to state, 120 N.W. at pages 63–64:

"The contention of the appellant is that the testimony was given undue prominence by such reading, and that the jurors should have been compelled to depend upon their individual recollection of it. The testimony is reported so that it may become a part of the permanent record, and thus assist in the administration of justice in both civil and criminal cases. The lawyers depend upon the report in the future progress of the case, and a translation thereof furnishes this court its only means of determining disputed questions as to the record. In argument to the jury, attorneys may refresh their recollections by reading from the notes. McConkie v. Babcock, 101 Iowa 126, 70 N.W. 103. And we know of no sound reason why the memories of jurors may not be stimulated in the same way. It will certainly promote justice in all cases if the triers of fact understand and remember the evidence upon which the case must rest and be determined, and, where there is an honest doubt in the mind of a juror as to what was said by a witness, it cannot be prejudicial to any one to have such doubt removed by a rehearing of such testimony. And this is particularly true in view of our statutes on the subject. We have been cited to no case directly in point, but in Herring v. State, 1 Iowa 205, there was a holding analogous to our conclusion here. Fleming v. [Town of] Shenandoah, 67 Iowa 505, 25 N.W. 752, was a case where the reporter went into the jury room, and, in the absence of court and counsel and without the knowledge of the defendant or counsel, read from his notes made at the

trial such portions of the testimony as the jury called for. That case is clearly not controlling here."

There are several other Iowa cases holding that it is proper to grant the request of a jury for the reading of designated testimony. State v. Strable, 1940, 228 Iowa 886, 293 N.W. 441; State v. Hunt, 1900, 112 Iowa 509, 84 N.W. 525.

In the case of State v. Strable, supra, the following statement appears, 293 N.W. at page 444:

"During the jury's deliberations, they requested the court to read to them the testimony of the sheriff, his deputy and appellant. The request was modified and the testimony of the sheriff was read to the jury. The foreman then said, 'I believe what he has read is sufficient.' Counsel for appellant excepted and, after the jury had again retired, requested that all of the testimony of the deputy and appellant be also read. This request was denied, because of the jurors' statement that sufficient record had been read. There was no error in such ruling."

The objection most frequently made is that the reading of a portion of the testimony in the case will place undue emphasis thereon. In the case of Autry v. State, supra, the court states, 38 So.2d at pages 352–353:

"While charges which tend to emphasize certain phases of the evidence are faulty, and the giving of such charges is erroneous, the vice of such charges is that the emphasis of particular portions of the evidence emanates from sources outside the jury, an influence not permissible. Where a jury itself requests that certain testimony be read over to them by the court reporter, to refresh their recollection concerning it, the emphasis on this portion of the testimony is already inherently present in the jury's mind, and certainly the mere rereading of the requested portion of the testimony, to clarify the jury's rec-

ollection thereof cannot add any emphasis not already present as to such testimony. No error therefore resulted from the court's action in permitting the court reporter to read to the jury, at their request, and with the implied consent of the appellant, that portion of prosecutrix's testimony which was read to the jury."

In the case of Phillips v. Carlson, supra, the court states, 284 P.2d at pages 606–607:

"In the trial of an action, if the jury, after hearing the evidence and after having been instructed by the court and retired to its room, disagrees as to the testimony of a certain witness, it is not error for the court at the request of the jury, in the presence of or after notice to the parties or their counsel, to require the official court reporter to read the testimony of the witness which is in dispute, and which was taken down by him when the witness was on the stand. When this is done, the objection that undue emphasis is given the evidence thus read cannot be sustained. State v. Logue [115 Kan. 391, 223 P. 482]; 53 Am.Jur. 666; 64 C.J. 1044; 89 C.J.S., Trial, § 479, p. 126. The court did not err, in the absence of the jury's request to have the testimony re-read of other witnesses bearing on the same subject."

█  The fact that the reading of the testimony requested by a jury will consume considerable time apparently does not justify the trial court in refusing such request. In the case of State v. Palmer, 1952, 173 Kan. 560, 251 P.2d 225, the Kansas Supreme Court stated, 251 P. 2d at page 232:

"In this connection appellant complains of the conduct of the bailiff. It appears that the foreman of the jury advised him that the jury would like to have the testimony of a certain witness read to them and were informed by the bailiff that it would take two or three

hours to read the testimony, whereupon the jury said they would get along without it. Possibly the bailiff reported that request to the court and was directed by the court to advise the jury as he did. Either way it was done we think it was improper. At any time a jury feels the need of hearing testimony read the request should not be refused because of the time it would take to read the testimony."

In the case of Shiers v. Cowgill, 1953, 157 Neb. 265, 59 N.W.2d 407, 414–415, the Nebraska Supreme Court held that the matter of granting a request of a jury for the reading of testimony was discretionary with the trial court. In that case the trial judge was under the erroneous impression that he had no authority to grant such a request.

Ever since the advent of court reporting, litigants have assigned error either upon the granting by the trial court of a jury request for the reading of testimony or upon the refusal of the trial court to order the reading of other testimony relating to the subject matter not requested by the jury. So far as can be ascertained, never once has such assignment of error been upheld. However, "with that hope that springs eternal" litigants continue to make such assignment.

In general, at least earlier, the tendency has been to view with suspicion the taking of notes by jurors. It has been suggested that this suspicion had its origin in the time when illiteracy was common and literacy was uncommon. In Woodcock, Note Taking By Jurors, 55 Dickinson Law Review 335 (1951), the following appears (Id. at page 335):

"Anyone attending court will notice that the presiding judge, interested counsel, and the newspaper men are asiduously making notes of important or interesting statements of the witnesses testifying in the case. The Judge will use his notes as a basis for his charge; the counsel theirs for the purpose of cross examination or in summing up and expounding their theory at the conclusion of the trial; and the newspaper men will use theirs to give the public, through the press, an adequate and complete picture of what develops in the court room. In the meanwhile, an official stenographer will be noticed meticuously recording every spoken word and carefully identifying all papers, records and photographs offered in evidence. * * * It will be likewise noted that of all the persons engaged, directly or indirectly, in the trial of a case, these in the Jury Box are the only ones not making notes, because should any of them attempt to do so, the presiding judge either on his own motion or because requested by counsel will inform the jurors that they are not allowed to take any notes but must rely entirely on their memories when they later meet in a closed session to determine upon a verdict."

On page 337 the same author states:

"There can be no doubt that when the first jurors were called upon to determine an issue of fact few, if any, of them were able to read little less to write. When the law was dealing with men who were illiterate it can readily be seen that the taking of notes at a trial could have been the privilete of the one or two in the average jury and their written recollection might have had undue weight with their fellows in determining the truth of facts presented to them. While human memories have not improved the literacy of juries has."

The matter of note taking by jurors is the subject of an annotation at 154 A.L.R. 878 (1945). It is the subject of law review comment in Woodcock, supra; Buzard, Jury Note-taking in Criminal Trials, 42 J.Crim.L., C. & P.S. 490 (1951); 32 J.Am.Jud.Soc. 57–59 (August 1948); comment, 43 Michigan L. Rev. 803 (1945). See also 2 Belli, Modern Trials, Sec. 304(6) (1954); 23 C.J. S., Criminal Law, § 1367, p. 1028; 89

C.J.S., Trial, § 456, pp. 80–81. The American Law Institute, Code of Criminal Procedure (1931), commentary to section 330 (p. 987), reads as follows:

"The jury may take with them when they retire for deliberation, (1) all papers which have been received as evidence in the cause (except depositions), (2) copies of such public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession, (3) written instructions given, (4) notes of the testimony taken by themselves or any of them but none taken by any other person, (5) notes of the other proceedings taken by themselves or any of them but none taken by any other person."

Handbooks for jurors in some states inform the jurors they may take notes. See Buzard, supra, at 492 footnote 12. The 1943 and the 1955 editions of federal jurors' handbooks published by authorization of the Judicial Conference of the United States, the Federal Rules of Civil Procedure, 28 U.S.C.A., and the Federal Rules of Criminal Procedure, 18 U.S.C.A., do not contain any references to the matter of taking notes by jurors. There is no federal statute relating to the matter.

In a number of states, including Iowa, the legislatures were apparently of the view that permitting the taking of notes by jurors was of importance and enacted legislation granting such right. Nine states have enacted statutes granting jurors the right to take notes in criminal actions: Calif.Penal Code, § 1137 (1949); Idaho Code, § 19–2203 (1947); Iowa Code, § 784.1 (1954), I.C.A.; Minn. Stat.Ann. § 631.10 (1947); Rev.Codes of Mont. 1947, § 94–7303; Nev.Comp.Laws 1929, § 11004; McKinney Consol. Laws of N. Y., Code Cr.Proc. § 426; N.D.Rev. Code 1943, § 29–2204; Utah Code Ann. 1953, § 77–32–2. Those statutes contain substantially the same provisions. They are regarded as giving the jurors the right to take notes "as a matter of right." Buzard, supra, at 492.

The Iowa statute relating to the taking of notes by jurors first appeared as Section 3022, Code of Iowa 1851. It reads as follows:

"The jury may also take with them notes of the testimony or other proceedings on the trial taken by themselves or any of them, but none taken by any other person."

It now appears as a part of Section 784.1, Code of Iowa 1954, I.C.A. While the statute appears in the portion of the Code relating to criminal trials and the Iowa Rules of Civil Procedure, 58 I.C.A., contain no reference to the taking of notes by jurors, yet the Iowa Supreme Court has indicated in another connection that the rules as to evidence and procedure should be the same in both civil and criminal trials. See State v. West, 1924, 197 Iowa 789, 198 N.W. 103, 105. There are no Iowa cases having to do with the statute. While the statute is clear as to the right of jurors to take notes on their own initiative, yet there is open in Iowa the question as to whether upon request of counsel the trial judge should inform the jurors of such and the question which has arisen in some of the cases hereafter referred to as to whether counsel in argument may ask the jurors to take notes as to certain matters, usually items of damages. While a state rule of practice is not binding upon a federal court holding court therein, yet if the question as to a certain practice is an open one, respectful consideration could well be given by such Court to a long established state rule of practice. In the absence of statute the question has generally not been must the trial judge permit the practice but whether he must forbid it. See United States v. Chiarella, 2 Cir., 1950, 184 F.2d 903, 907, and Buzard, supra, at 490. Some courts have regarded the taking of notes by jurors as being of such seriousness as to constitute reversible error. Cheek v. State, 1871, 35 Ind. 492; Corbin v. City of Cleveland, 1944, 144 Ohio St. 32, 56 N.E.

2d 214, 154 A.L.R. 874, affirming 1943, 74 Ohio App. 199, 57 N.E.2d 427. In the first case cited two jurors persisted in taking notes of the evidence, even though being told not to so do by the court and over the objection of the defendant. The appellate court, in holding this to be misconduct on the part of the jurors, reversed the defendant's conviction and granted a new trial, saying, 35 Ind. at pages 494–495:

> "This disobedience of the order of the court was a gross violation of, and contempt for, the authority of the court, and was misconduct for which the jurors might have been severely punished, and of itself would entitle the defendant to a new trial. It was well calculated to divert the attention of the jurors, while they were busy, pencil or pen in hand, from the evidence, as it would naturally be progressing while such notes were being made. The juror is to register the evidence, as it is given, on the tablets of his memory, and not otherwise. Then the faculty of the memory is made, so far as the jury is concerned, the sole depository of all the evidence that may be given; unless a different course be consented to by the parties, or the court. Burrill Cir. Ev. (2d ed.) 108, and note (a). The jury should not be allowed to take the evidence with them to their room, except in their memory. It can make no difference whether the notes are written by a juror or by some one else. Jurors would be too apt to rely on what might be imperfectly written, and thus make the case turn on a part only of the facts."

The statement in the foregoing opinion that "The juror is to register the evidence, as it is given, on the tablets of his memory" unaided by notes is one sometimes quoted by those who do not favor the taking of notes by jurors. See Thornton v. Weaber, 1955, 380 Pa. 590, 112 A.2d 344, 347. It has been suggested that it is inconsistent not to require the same of judges in court tried cases. See 32 J.Am.Jud.Soc'y, supra, at 57–58. In that article the following appears (at pages 57–58):

> "It seems inconsistent to permit a trial judge, trained in the art of hearing and weighing evidence * * * to take notes of the evidence, and to deny jurors with little or no experience the right to this aid to their memory during their deliberations. The philosophy of this argument would seem to be that men are divided into two groups mentally—those who perchance need, or at least may have the benefits of notes, and on the other hand those who, obviously in greater need shall be denied this aid."

No case has been found in which a litigant has urged error because the judge in a court tried case made use of notes instead of registering the evidence as it was given "on the tablets of his memory." In the case of Corbin v. City of Cleveland, supra, the trial judge on his own motion informed the members of the jury after they were impaneled that they would be permitted to take notes and arranged for facilities for so doing. A verdict was returned in favor of the plaintiff. The Ohio Court of Appeals held such action was prejudicially erroneous and granted a new trial. That holding was affirmed by the Supreme Court of Ohio. The holding of that case is the subject of critical comment in 43 Mich.L.Rev. 803 (1945). In the case of Thornton v. Weaber, 1955, 380 Pa. 590, 112 A.2d 344, the Supreme Court of Pennsylvania stated as follows, 112 A.2d at page 347:

> "During the charge of the Court, the Trial Judge invited the jury to make notes on certain amounts mentioned by him. The writing of memoranda by jurors is not encouraged in the Courts of Pennsylvania and generally is forbidden. The reasoning behind the prohibition is that by taking notes, a juror emphasizes to himself and perhaps later to other jurors one feature of the

case over other equally important features and thus a resulting distorted view may be gained of the whole picture which is before the jury for deliberation. Another objection to this practice is that a juror taking notes, unless he be a skilled shorthand writer, is most likely to miss what is being said while he is trying to record what has already been heard. A still further criticism which can be advanced is that a juror hurriedly scribbling notes is apt to divert the attention of the other jurors and possibly also create the impression he is more alert and to be regarded as more informed than the other jurors who have not taken notes. * * * It does seem that in a long involved trial there would be something to be said in favor of permitting jurors to jot down an item here and there as a memory-refreshers when later the jury must recall and consider all the testimony. The almost universal custom, however, seems to be to the contrary."

In the case of United States v. Davis, C.C.W.D.Tenn.1900, 103 F. 457, affirmed 6 Cir., 1901, 107 F. 753, in the trial Court's opinion, the following appears, 103 F. at page 470:

"There is no force in the objection as to the action of the court in suppressing the taking of notes by jurors. The court had noticed for several days that two of the jurors persistently and diligently took notes of all the testimony and of all the occurrences of the trial, and another juror occasionally took notes of the evidence. The attention of counsel was called to it, with the result that the jurors were directed to discontinue the practice, and were required, after explanation of the reason of it, to seal up the notes they had taken, and deliver the envelopes to the marshal for safe custody, these being returned sealed as they were by themselves to the jurors after the trial. There was an exception by

the defendant to a juror's taking notes by permission of the court in Agnew v. United States, 165 U.S. 36, 45, 17 S.Ct. 235, 41 L.Ed. 624; but nothing came of it, because the record did not show that any notes were taken in fact. But the practice is an improper one. Thomp. & M.Jur. § 390. It gives the juror taking notes an undue influence in discussing the case when he appeals to his notes to settle conflicts of memory. Without corrupt purpose, his notes may be inaccurate, or meager or careless, and loosely deficient, partial, and altogether incomplete. With a corrupt purpose, they may be false in fact, entered for the purpose of misleading or deceiving his fellows when he comes to appeal to them. There is no protection against such dangers except to forbid the practice. It is allowed by statute in some states, which would imply that without a statute it is not permissible. Id. § 402. It is perhaps a matter within the discretion of the court, like others of that character."

In the present case the defendant made proper and timely objection to the taking of notes by jurors so there is not here involved the matter of waiver. As to the waiver of the objection, see Cluck v. State, 1872, 40 Ind. 263; Long v. State, 1884, 95 Ind. 481; Conger v. White, 1945, 69 Cal.App.2d 28, 158 P.2d 415; Randolph v. O'Riorden, 1892, 155 Mass. 331, 29 N.E. 583; Swift & Co. v. Bleise, 1902, 63 Neb. 739, 89 N.W. 310, 57 L.R.A. 147; State v. Robinson, 1893, 117 Mo. 649, 23 S.W. 1066. On other questions connected with the taking of notes by jurors, see also Agnew v. United States, 1897, 165 U.S. 36, 45, 17 S.Ct. 235, 41 L.Ed. 624; Kelley v. Call, 1944, 324 Ill.App. 143, 57 N.E.2d 501; State v. Joseph, 1893, 45 La.Ann. 903, 12 So. 934; First Federal Savings & Loan Ass'n v. Williams, Ohio App.1947, 91 N.E.2d 34; B. H. Palmer & Son v. Cowie, 1905, 17 Ohio Cir. Dec. 617, 623. The overwhelming weight of authority is to the effect that apart from statute the

matter of note taking by jurors rests largely in the discretion of the trial court. Goodloe v. United States, 1950, 88 U.S.App.D.C. 102, 188 F.2d 621, certiorari denied 1951, 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619; United States v. Chiarella, 2 Cir., 1950, 184 F.2d 903, judgment vacated and case remanded to trial court for resentencing 1951, 341 U.S. 946, 71 S.Ct. 1004, 95 L.Ed. 1370; Chicago & N. W. R. Co. v. Kelly, 8 Cir., 1936, 84 F.2d 569; Waldrip v. Liberty Mut. Ins. Co., D.C.1951, 11 F.R.D. 426, 430; Cahill v. Mayor & City Council of Baltimore, 1916, 129 Md. 17, 98 A. 235; Omaha Fire Ins. Co. v. Crighton, 1897, 50 Neb. 314, 69 N.W. 766; Koontz, Phillips & Stamm v. Mylius, 1916, 77 W.Va. 499, 87 S.E. 851; Thomas v. State, 1892, 90 Ga. 437, 16 S.E. 94; Tift v. Towns, 1879, 63 Ga. 237; Denson v. Stanley, 1919, 17 Ala.App. 198, 84 So. 770, certiorari granted on another ground sub. nom. Ex parte Stanley, 1919, 203 Ala. 408, 84 So. 773. See also United States v. Carlisi, D.C.1940, 32 F.Supp. 479 and Gasparovic v. Reed, 1924, 5 Pa.Dist. & Co.R. 531. In the case of United States v. Chiarella, supra, the United States Court of Appeals for the Second Circuit, speaking by Judge Learned Hand, stated, 184 F.2d at page 907:

"Next is the objection to the judge's refusal to let the jurors take notes of the evidence during the trial. The notion at times has been countenanced that jurors should not be allowed to take notes, on the theory that they take on an undue importance when the jury deliberates. * * * The supposed dangers appear to us far-fetched, if not imaginary; but even if we are wrong, it has never been suggested that the judge must *permit* the practice; the question has always been whether he must *forbid* it. Moreover, it is at most a matter of discretion"

In the case of United States v. Carlisi, supra, the Court stated, 32 F.Supp. at page 483:

"Perhaps once or twice during the trial a juror made a note of a date or the name of a witness. Objection to this was made by the attorney for James and Josephine De Simone. * * * There is no legal reason why such notes should not be made by jurors. Judges and lawyers make notes, why not jurors? Certainly the making of notes would better aid their memories and thus enable them to more intelligently consider the evidence."

In the case of Chicago & N. W. R. Co. v. Kelly, supra, the Circuit Court of Appeals for this Circuit, speaking by Judge John B. Sanborn, stated, 84 F.2d at page 576:

"There is one other matter to be considered, and that is the request by plaintiff's counsel that the jurors take down his calculations relative to the damages sustained by plaintiff. No prejudice is shown to have resulted from this request, and we think the matter of taking notes by jurors is one which can safely be intrusted to the common sense and good judgment of the trial courts. The request that notes be taken by jurors should be addressed to the court, and communicated by it to the jurors, with suitable instructions, if notes are to be taken."

Counsel for the plaintiffs are frequently desirous of having jurors take notes as to the items of damages claimed. Some courts have held that it is not reversible error for counsel to request the jury during his argument to take notes as to the damages claimed. Ettelsohn v. Kirkwood, 1889, 33 Ill.App. 103. However, that practice has been disapproved. Indianapolis & St. L. R. Co. v. Miller, 1874, 71 Ill. 463, 472. In the case of Chicago & N. W. R. Co. v. Kelly, supra, 84 F.2d at page 576, the Court of Appeals for this Circuit makes it clear that any request by counsel for the taking of notes by jurors must first be addressed to the Court out of the hearing of the jury.

In the opinions of some of the appellate courts which disapprove the taking of notes by jurors, the view is expressed that where one or more of the jurors

take notes they will in the event of disagreement in the jury room as to the evidence given by a certain witness or witnesses persuade the other members of the jury to accept their version of such testimony even though such version might be erroneous. In the days prior to the advent of court reporting, in the event of disagreement among the jurors as to certain testimony, there would not have been any satisfactory way of verifying what a witness or witnesses did actually testify. Since the advent of court reporting, when jurors get into a disagreement as to certain testimony, they can and do request that the testimony in question be read to them by the reporter.

It has been stated that the reasoning behind the prohibition of note taking by jurors is "that by taking notes a juror, emphasizes to himself and perhaps later to other jurors one feature of the case * * * and thus a resulting distorted view may be gained" of the case. Thornton v. Weaber, supra, 112 A.2d at page 347. It would seem that this objection would be somewhat subjective in character and lacking substantial factual support. How jurors might or might not be affected in their deliberations by the use of notes would seem to require information as to what occurs in the jury room during jury deliberations. Such information is seldom available either to trial courts or appellate courts.

There is little objective information available to the courts as to what does or does not affect jurors in their deliberations. Conclusions as to those matters are generally and necessarily based upon conjecture. Such conjecturing might come within the scope of the oft-quoted statement of "wholesale returns of conjecture out of such a trifling investment of fact." Such thought would seem to be encompassed by the statement by Circuit Judge Learned Hand in United States v. Chiarella, supra, 184 F. 2d at page 907, that objections to jurors taking notes are "far-fetched" and "imaginary."

Where a juror takes notes on his own volition, such would seem to constitute an objective showing that such juror considered that by so doing he would be better able to follow and recollect the evidence. Where a request for leave to take notes is made by the foreman in behalf of the jury, such request constitutes a similar objective showing on the part of the members of the jury. This Court is of the view that it would only be in an exceptional situation where a juror should be stopped by the court from taking notes on his own volition and that only in an exceptional situation should the request of a jury for leave to take notes be denied. Where the jurors do not take notes voluntarily, nor request to so do, the question as to whether the matter of note taking should be brought to the attention of the jury, either by the trial court on its own motion or upon request of counsel, is more troublesome. In a case where the issues are few and the evidence is not extensive or detailed, it would seem that it would serve no particular objective of judicial administration to bring the matter of note taking to their attention. It is the view of the Circuit Court of Appeals for this Circuit, 84 F.2d at page 576, that the matter of taking notes by jurors "can safely be" entrusted to the trial courts.

It is the view and holding of this Court that in the present case it was proper to grant the request of the jury for the reading of the testimony of the complaining witnesses; that it was proper to deny the request of the defendant for the reading to the jury of the testimony of the defendant relating to the same subject matter.

It is the further view and holding of this Court that it was proper to grant the request of the jury for leave to take notes.